[Cite as *Homrighausen v. Dover*, 2024-Ohio-5454.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| RICHARD P. HOMRIGHAUSEN | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellant | Hon. John W. Wise, J.<br>Hon. Andrew J. King, J. |
| -vs- | |
| | Case No. 2024 AP 03 0012 |
| CITY OF DOVER, OHIO, et al. | |
| Defendants-Appellees | O P I N I O N |


CHARACTER OF PROCEEDING:     Civil Appeal from the Court of Common
                             Pleas, Case No. 2022 CV 04 0188


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      November 19, 2024


APPEARANCES:

For Plaintiff-Appellant                 For Defendants-Appellees

JONATHAN J. DOWNES                      ROBIN M. WILSON
DREW C. PIERSALL                        DOLORES P. GARCIA
ZASHIN AND RICH CO., LPA                HALDEN R. SCHWALLIE
17 South High Street                    UB GREENSFELDER LLP
Suite 900                               Skylight Office Tower
Columbus, Ohio  43215                   1660 West 2nd Street, Suite 1100
                                        Cleveland, Ohio  4113-1406

*Wise, J.*

**{¶1}** Plaintiff-Appellant Richard P. Homrighausen appeals the October 6, 2023, Judgment Entry entered by the Tuscarawas County Court of Common Pleas, granting Summary Judgment on Defendant-Appellee City of Dover's counterclaim for reimbursement for payments made to Appellant for officiating weddings during his tenure as Mayor for the City of Dover.

## STATEMENT OF THE FACTS AND CASE

**{¶2}** The relevant facts and procedural history are as follows:

**{¶3}** Appellant Richard P. Homrighausen is the former Mayor of the City of Dover (Appellee), a municipal corporation located in Tuscarawas County, Ohio.

**{¶4}** On March 11, 2022, a Tuscarawas County grand jury indicted Appellant on the following felony charges in Case No. 2022 CR 03 0072: One count of Theft in Office (R.C. § 2921.41(A)(1) and (B)); One count of Having an Unlawful Interest in a Public Contract (R.C. § 2921.42(A)(1) and (E)); Six counts of Filing Incomplete, False and Fraudulent Tax Returns. (R.C. §5747.19); and four misdemeanor charges including: One count of Soliciting Improper Compensation (R.C. § 2921.43(A)(1) and (D)); Two counts of Dereliction of Duty (R.C. § 2921.44(E) and (F)); and one count of Representation by Public Official or Employee (R.C. § 102.03 and R.C. §102.99).

**{¶5}** The charges arose after an investigation uncovered irregularities with fees paid to Appellant, the then Mayor, to perform weddings. In said case, the state of Ohio asserted Appellant used City resources and charged a fee for the weddings, but pocketed the fees for himself instead of turning them over to the City treasury.

**{¶6}** On May 4, 2022, the Special Commission issued its Notice of Final Determination suspending Appellant from office pursuant to R.C. §3.16(C)(3)(b) and (4).

**{¶7}** From May 5, 2022, through November 16, 2022, the period from Appellant's suspension up to his conviction and disqualification from public office, the City paid compensation and benefits to Appellant in the amount of $77,802.06.

**{¶8}** On November 17, 2022, a jury found Appellant guilty on the felony charge of Theft in Office, in violation of R.C. §2921.41(A)(1), and five misdemeanor charges: four counts of Soliciting Improper Compensation, in violation of R.C. §2921.43; and one count of Dereliction of Duty, in violation of R.C. § 2921.44.

**{¶9}** On January 19, 2023, the trial court sentenced him in his criminal case, and in determining an "appropriate sentence," the trial court considered among other matters the fact that "the offender held a public office and the offense was related to that office."

**{¶10}** The instant case began when Appellant filed a Declaratory Action Complaint, claiming the City of Dover entered into an improper settlement agreement with three terminated employees without approval from the City's appointing authority and admitted liability on Appellant's behalf in that settlement agreement.

**{¶11}** On May 23, 2023, the City asserted two counterclaims against Appellant. Its first counterclaim sought repayment for compensation collected by Appellant during a suspension after he was subsequently removed from office, pursuant to R.C. §3.16. Its second counterclaim sought, under R.C. §9.39, recoupment of fees allegedly collected by Appellant for solemnizing marriages while he served as Mayor of the City of Dover.

**{¶12}** On June 9, 2023, each party filed motions for summary judgment on their claims.

**{¶13}** On July 7, 2023. Appellant filed a second motion for summary judgment on Appellee's second counterclaim.

**{¶14}** By Judgment Entry filed October 6, 2023, the trial court denied both of Appellant's motions for summary judgment, dismissed Appellant's Complaint for Declaratory Judgment, and granted Appellee's motion for summary judgment. The trial court found that Appellee was entitled to reimbursement for any wedding fees collected by Appellant over the course of his tenure as Mayor but found that a genuine issue of fact remained as to the amount of fees collected by Appellant. The court set a damages hearing to determine the amount of wedding fees collected by Appellant.

**{¶15}** On November 2, 2023, the damages hearing was held. At said hearing the trial court heard from four witnesses: the former Mayor's Executive Assistant Eva Newsome, the Mayor's former Executive Assistant Vicki Vorhees, the City's Auditor Nicole Stoldt and the former Treasurer.

**{¶16}** On February 23, 2024, the trial court rendered its final judgment wherein it found that Appellant officiated over 1,000 weddings under the authority granted to him as Mayor of the City and determined that Appellant received $28,355.00 in wedding fees, and ordered Appellant to reimburse the City for those fees.

**{¶17}** Appellant now appeals, assigning the following assignments of error:

<u>**ASSIGNMENTS OF ERROR**</u>

**{¶18}** "I. THE COMMON PLEAS COURT ERRED IN FINDING THAT THE CITY OF DOVER WAS ENTITLED TO SUMMARY JUDGMENT ON ITS SECOND COUNTERCLAIM AGAINST APPELLANT.

**{¶19}** "II. THE COMMON PLEAS COURT ERRED IN FINDING THAT THE CITY OF DOVER ESTABLISHED DAMAGES FOR THE RECOUPMENT OF WEDDING FEES IN THE AMOUNT OF $28,355.00."

**I.**

**{¶20}** In his first assignment of error, Appellant argues the trial court erred in granting summary judgment in favor of Appellees. We disagree.

*Standard of Review*

**{¶21}** Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 36 (1987). As such, we must refer to Civ.R. 56(C) which provides in pertinent part:

Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

**{¶22}** Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record demonstrating the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Vahila v. Hall*, 1997-Ohio-259, citing *Dresher v. Burt*, 1996-Ohio-107.

**{¶23}** The City asserted a counterclaim against Appellant for reimbursement of wedding fees pursuant to R.C. §9.39, which provides, in relevant part:

> All public officials are liable for all public money received or collected by them or by their subordinates under color of office. All money received or collected by a public official under color of office and not otherwise paid out according to law shall be paid into the treasury of the public office with which the public official is connected …

**{¶24}** Initially, Appellant argues that while the City argued that it was entitled to the money collected by Appellant for *conducting wedding ceremonies under color of office*, it failed to show that Appellant *collected the wedding fees under color of office.*

**{¶25}** Appellant herein argues that he did not have a duty to deposit fees for weddings with the city treasurer because there is no express provision under the Ohio Revised Code which required him to do so.

{¶26} When considering a similar argument concerning R.C. §733.40 in Appellant's direct appeal from his criminal convictions for Theft in Office, Soliciting Improper Compensation, and Dereliction of Duty, this Court held:

That section states in pertinent part:

* * * *[A]ll fines, forfeitures, and costs in ordinance cases and **all fees that are collected by the mayor, that in any manner come into the mayor's hands,** or that are due the mayor or a marshal, chief of police, or other officer of the municipal corporation, any other fees and expenses that have been advanced out of the treasury of the municipal corporation, and all money received by the mayor for the use of the municipal corporation **shall be paid by the mayor into the treasury of the municipal corporation on the first Monday of each month.** * * * *. (Emphasis added).

This argument is misplaced because regardless of terminology, the uncontroverted evidence established appellant solicited and accepted a "fee" or "gratuity" or "payment" or any other term describing an amount of money charged by appellant in his capacity as mayor of the City of Dover to perform weddings, and appellant kept those fees or gratuities or payments, i.e. the money, for himself.

{¶27} *State v. Homrighausen*, 5th Dist. Tuscarawas No. 2023AP020008, 2024-Ohio-6, ¶¶ 36-38

{¶28} For the same reasons, we are unpersuaded by Appellant's arguments that his receipt of fees for performing wedding ceremonies as Mayor were not done under

color of office.  Appellant's only authority to perform the wedding ceremonies came solely by virtue of his position as Mayor, through R.C. §3101.08. He used his office and office staff to schedule and help perform these weddings. He performed the ceremonies as the Mayor of Dover.  He therefore was acting "under color of office" when he performed the ceremonies, and any fees he charged and collected for such belonged to the City and should have been paid to the treasury of his public office.

{¶29}  In support of its motion for summary judgment on its counterclaim, Appellee provided testimony in the form of an Affidavit by Eva Newsome, Appellant's Executive Assistant, who stated that she assisted Appellant with the officiating of weddings by filling out he paperwork, including the vows, collecting payments and providing receipts and scheduling. (Affidavit at ¶ 4). She stated that she performed these tasks during business hours on her work computer. *Id.* She stated that Appellant conducted weddings during business hours and the payments were paid directly to Appellant. *Id.*  She further testified that Appellant required that payments be made to him in cash or checks made out to him personally. *Id.*

{¶30}  Appellant provided no evidence to contradict Ms. Newsom's Affidavit testimony to demonstrate that an issue of material fact existed with regard to this issue.

{¶31}  In his own deposition, when questioned about receiving and retaining payment for performing wedding ceremonies, Appellant invoked the Fifth Amendment:

> Q: When you performed weddings, did you personally receive payment for performing those weddings?
>
> A: On the advice of my attorney, I invoke my Fifth Amendment right.

Q: And when you received payment for performing weddings, did you provide the moneys received to the City?

A: On the advice of my attorney, I invoke my Fifth Amendment right.

Q: Did you ever report the moneys that you received for performing weddings to the County - excuse me - to the City auditor?

A: On the advice of my attorney, I invoke my Fifth Amendment right.

Q: When you received money for performing weddings, did you personally retain that money?

A: On the advice of my attorney, I invoke my Fifth Amendment right.

**{¶32}** (Homrighausen Depo. at 81, 85, 87).

**{¶33}** Based on the foregoing, we find that Appellee was entitled to summary judgment on its counterclaim.

**{¶34}** Appellant's first assignment of error is overruled.

**II.**

**{¶35}** In their second assignment of error, Appellant argues the trial court erred in finding that the City of Dover established damages for the recoupment of wedding fees in the amount of $28,355.00. We disagree.

**{¶36}** A reviewing court will not reverse a trial court's decision regarding its determination of damages absent an abuse of discretion. *Darfus v. Clark*, 2013-Ohio-563, ¶ 54 (5th Dist.). A reviewing court will not reverse a trial court's decision regarding its determination of damages absent an abuse of discretion. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**{¶37}** "In conducting a hearing on damages, the trial court has broad discretion in assessing the weight and credibility of the evidence of damages." *Skiver v. Wilson*, 2018-Ohio-3795, ¶ 18 (8th Dist.).

**{¶38}** At the damages hearing in this matter, Ms. Newsome, the Mayor's Executive Assistant, testified that for as long as she could recall, the wedding fee schedule was displayed on a bulletin board in the Mayor's office listing the costs for the marriage ceremonies based on the time and location of the wedding. (T. at 16-17) Costs for the Mayor to officiate weddings varied depending on whether it was during the City's normal business hours, after business hours or on a weekend, at the City offices or at a different location. *Id.* She testified that when Appellant officiated weddings during business hours as the Mayor, a public official, he was assisted by City employees.

**{¶39}** Ms. Newsome testified that upon receiving a request for a wedding to be performed, she would prepare all paperwork, arrange for the Mayor to conduct the wedding, calculate and advise the couple as to the fees, prepare the vows that the Mayor used, and prepare the wedding license. (T. at 20). She further testified that for the wedding procedure, the couple had to pay by cash or by check made payable to Richard Homrighausen. (T. at 21). Appellant directly accepted all payments for the weddings, and the parties to be married paid Appellant either by checks made out to Appellant (not the City) or in cash. On at least one occasion, Appellant instructed a City of Dover employee to return a check made out to the "City of Dover" and request that they submit a check made out to Appellant personally. (T. at 16-25.)

**{¶40}** Ms. Newsome also testified that anyone who requested wedding services would call City Hall to request the Mayor's officiating services:

Q: Going back, when people would call the office – when people would call and you would provide this information over the phone; what number would they call?

A: Three-Three-Zero-Three-Four-Three-Six-Seven-Two-Six

Q: And what number does that go to?

A: That's the number to City Hall.

Q: Is that the official City Hall one?

A: Yes, it is.

**{¶41}** (T. at 97).

**{¶42}** Ms. Newsome further testified that she was custodian of the records in the Mayor's office, including the records that included the wedding receipts and files for each wedding that the Mayor performed. (T. at 24.) She testified that she personally reviewed those documents and prepared the spreadsheets for the wedding fees that were presented at trial. (T. at 35.)

**{¶43}** Ms. Newsome explained:

I started recording [the wedding fees] because I was concerned that the Mayor had asked me to remove that wedding fee schedule in the presence of State Auditors and I was fearful that I didn't want to do something to get into trouble so I just wanted to keep a record of what weddings were being done and how that was being processed.

**{¶44}** (T. at 35-36).

**{¶45}** Ms. Newsome, as custodian of the records, also testified that she personally prepared spreadsheets of wedding receipts for each year from 1996 until she was hired

in 2014, in addition to the spreadsheets she had kept from 2014 forward. For each entry, she indicated whether or not there was a receipt to reflect payment. (T. at 37-44). When asked at the hearing if these records were under her custody and control, Newsome answered, yes.

Q: How did you go about locating the relevant receipts?

A: There in the receipt books that are kept in the office that are documents that I manage.

**{¶46}** (T. at 52).

**{¶47}** The original receipt books were also entered into evidence.

**{¶48}** After hearing arguments from both parties, the trial court admitted the spreadsheets reflecting wedding fees received from 1996 forward, finding that a foundation had been "laid to have it admitted" but that "ultimately, the Court would "give it the weight that I think it deserves at a later time." (T. at 49, quoting the Court).

**{¶49}** In making its award of damages, the trial court found:

In this matter, the City has proven by a preponderance of the evidence that Homrighausen received $28,355.00 for weddings he performed under color of office during the time he served as the City's mayor. This is the amount established by the receipts in Exhibit A that clearly indicate on their face that the requested amount was in fact received. Additionally, the Court finds that the City has proven by a preponderance of the evidence that none of this money was paid into the City's accounts as required by R.C. 9.39

However, the Court concludes that, without testimony based on actual knowledge, it is too speculative to determine the amount of money received by Homrighausen that is not evidenced by corresponding receipts. Therefore, the City has not met its burden of proof regarding its request for reimbursement of undocumented fees in the amount alleged by the City. Any amount awarded for these fees would be the result of conjecture and improper speculation

**{¶50}** (Oct. 6, 2023, JE at 12).

**{¶51}** The trial court considered the evidence and found that Appellee had shown by a preponderance of the evidence that Appellant had received $28,355.00 for performing weddings as Mayor, and that he failed to pay said fees into the City treasury. In so finding, the trial court set forth a detailed review of the wedding fee receipts presented at the damages hearing.

**{¶52}** Upon review, based on the evidence presented to the trial court and the record before us, we do not find the trial court's determination of damages to be unreasonable, arbitrary, or unconscionable.

{¶53} Appellant's second assignment of error is overruled.

{¶54} For the foregoing reasons, the judgment of the Court of Common Pleas of Tuscarawas County, Ohio, is affirmed.


By: Wise, J.

Gwin, P. J., concurs.

King, J., dissents.


JWW/kw 1104

*King, J. dissents,*

{¶ 55} The City of Dover argues that it is entitled to recover the monies the former mayor received by conducting marriage ceremonies. The City's challenge rests on two arguments.

{¶ 56} The City first argues that it has legal title to monies the mayor received because a literal reading of the statute supports that conclusion. It is my view the City had no legal claim to the monies the mayor received, and that those monies are more appropriately considered a gratuity received for performing marriage services. Because my colleagues accept the invitation to read the statute literally, I dissent.

{¶ 57} I also feel compelled to write separately to address the City's additional argument, although it had no significance in Judge Wise's opinion for the court. The City's related argument is that R.C. 9.39 would still apply because it should be broadly construed as an anti-fraud provision. This construction is inconsistent with other provisions of the Revised Code and improperly usurps the prosecutor's role.

{¶ 58} The purpose of R.C. 9.39 is to make the City whole—not provide it with proceeds from criminal conduct. The power to force criminal restitution to victims or disgorge criminal proceeds from felonies rests solely in the office of the prosecuting attorney. The former mayor was convicted of soliciting improper compensation and arguably the gratuities he received would be subject to forfeiture under R.C. Ch. 2981. I generally agree with my colleagues to the extent that the facts here may warrant forfeiture, but I do not find the City of Dover is empowered to achieve that.

{¶ 59} The City of Dover claims that its former mayor, Richard Homrighausen, owes it thousands of dollars in fees he collected for performing marriage ceremonies. His

authority to solemnize marriages attaches to his office as mayor through R.C. 3101.08. The City reasons since this authority accrues to him by office of mayor, anytime he marries a couple and receives any compensation he is required to turn that sum over to the City under R.C. 9.39. I disagree.

{¶ 60} This is not the first time this court has been asked to review the mayor's conduct with regard to solemnizing weddings and his collection of fees. In the criminal appeal, the state argued because he failed to turn those fees over to the City under R.C. 733.40, he committed theft in office. *State v. Homrighausen*, 2024-Ohio-6 (5th Dist.). I disagreed with the court's conclusion to affirm the theft in office convictions in that matter because I concluded the City was not the owner of those fees. *Id.* at ¶ 83. This conclusion is bolstered by the natural implication from statutes cross-referenced in R.C. 3101.08, which require judges—but not mayors—to deposit those fees in the treasury.

{¶ 61} Simply put, if the City never had a legal claim or title to those fees, then there was no way for it to have been illegally deprived of those funds. Here, as under R.C. 2921.41(A)(1), the lack of a legal interest in those fees defeats the City's claims and thus summary judgment in its favor was improper.

{¶ 62} The City's argument that "any monies collected" by the former mayor—no matter for what reason—belongs to it does appeal to a literal reading of R.C. 9.89. While we must abide by the text, we should not pursue literalism as a proper tool of understanding the text. In rejecting a literal or strict constructionist approach to interpreting statutes, Justice Scalia remarked such an approach was "a degraded form of textualism that brings the whole philosophy into disrepute. I am not a strict constructionist, and no one ought to be . . . ." Antonin Scalia, *Common-Law Courts in a Civil-Law System:*

*The Role of United States Federal Courts in Interpreting the Constitution and Laws,* A Matter of Interpretation 3, 23 (2018). Instead, Justice Scalia said a statue should be interpreted reasonably. *Id.* He goes on to illustrate his point using *Smith v. United States*, 508 U.S. 223 (1993), where he dissented from the opinion of the Court that the defendant "used" a firearm during his crime. *Id.*

{¶ 63} Here, I reject the City's invitation to take a literalist approach to construing R.C. 9.89 and thus depart from my colleagues. Our task is to consider the text and the context that shapes its meaning. *Crookston v. Lykins*, 2024-Ohio-5131, ¶ 16. In my dissent to this court's opinion affirming the theft in office conviction, I discussed how R.C. 733.40 was narrowed by R.C. 733.30 and R.C. 3101.08. *Homrighausen*, 2024-Ohio-6, at ¶ 71-75. Moreover, I disagreed that the use of term "fees" in R.C. 733.40 could be expanded by the concept of apparent authority. *Id.* at ¶ 76-78. That analysis is relevant to R.C. 9.89, as it helps give us context to understand its meaning. Moreover, an additional rule of construction here is that a more specific statute generally controls over the more general. *State v. Volpe*, 38 Ohio St.3d 191, 193 (1988). Thus, I do not think we should read R.C. 9.89 in a vulgar, literal sense to avoid the significance of other statutes and read "any" to mean anything conceivable, no matter how attenuated the receipt of money is from legal interest of the political subdivision.

{¶ 64} I also conclude that the proper interpretation of "fees" in R.C. 733.40 and "monies collected" in R.C. 9.89 requires that the public entity have claim to the title of the funds it seeks. For example, when the mayor is collecting fees for permits or applications or receiving payments for municipal services, those are plainly funds in which the city has a legal interest. Not only would mayors be responsible under either statute for the failure

to turnover these fees, but that conduct would likely also be viewed as a dereliction of duty, which would give rise to sanctions.

{¶ 65} But I do not think either statutory term fairly encompasses gratuities and gifts a mayor may receive (whether properly or improperly) for solemnizing marriages. First, there is no situation where a mayor discharging his authority to solemnize marriages furthers the interest of the municipality. This power belongs to the mayor uniquely and without regard to whether he is acting as an agent for the municipality. Moreover, this power may be exercised (or not) with absolute discretion by the mayor. In fact, the mayor may elect to never exercise this power, and any failure to do so would not be a dereliction of duty. Thus, unlike the examples given above there is no agency relationship between the mayor and the city. Without that nexus, the city has no claim to the gratuities the mayor collected, even if the act is tied to a statutory power of that office.

{¶ 66} The City's argument to avoid any such limitation is to argue that R.C. 9.89 operates as an anti-fraud statute permitting it to sue and recover the proceeds of the former mayor's criminal conduct. Not only is this not the case, but a further examination demonstrates that this construction would run further afoul of the prosecuting attorney's authority.

{¶ 67} When a criminally convicted person is in possession of criminal proceeds, the prosecuting attorney can bring a forfeiture action under R.C. 2981.04.[1] And in order to obtain an order of forfeiture, the state must prove to the fact finder by clear and convincing evidence that the property is subject to forfeiture. R.C. 2981.04(B). Neither

---

[1]In this case restitution to the City of Dover was ordered as part of the criminal judgment of conviction. There may be an additional question of whether such an order impacts a public office's claim to funds under R.C. 9.89, but that is not before us.

that burden of proof nor the right to a jury trial is included in R.C. 9.89. Thus, reading R.C. 9.89 as an alternative method of forfeiture not only circumvents the prosecuting attorney's sole power to bring the claim but also important procedural safeguards for the accused person. Furthermore, R.C. 2981.04 contains important safeguards for third parties who may have an interest in the property that are absent from R.C. 9.89. Finally, R.C. 2927.21 appears to criminalize the City of Dover's future receipt of the criminal proceeds from the theft in office conviction. In considering these all together, I cannot agree that R.C. 9.89 is an anti-fraud provision that allows a political subdivision to pursue and receive proceeds of a criminal offense.

{¶ 68} Although the issue of whether R.C. 2981.04 necessarily narrows R.C. 9.89 is not squarely before us, I think this apparent conflict is yet another reason to decline the City of Dover's invitation to maximally construe the scope of R.C. 9.89. For this and the other reasons given, I believe R.C. 9.89 requires a narrower construction than that my colleagues and therefore, I dissent.